**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION**

XAVIER DANIELS,

    Plaintiff,

v.

COMMISSIONER BRIAN OWENS;
WARDEN STANLEY WILLIAMS; DEPUTY
WARDEN DEAL; and CORRECTIONAL
OFFICER,

    Defendants.

CIVIL ACTION NO.: 6:15-cv-143

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently incarcerated at Georgia State Prison in Reidsville, Georgia, submitted a Complaint in the above-captioned action pursuant to 42 U.S.C. § 1983. (Docs. 1, 7, 10, 11.) Based on the requisite frivolity review of Plaintiff's Complaint, as amended, I **RECOMMEND** that the Court **DISMISS** Plaintiff's claims against Defendant Brian Owens, as well as Defendant Correctional Officer. I further **RECOMMEND** that the Court **DISMISS** Plaintiff's claims for monetary damages against all Defendants in their official capacities, as well as Plaintiff's claims that are unrelated to his Eighth Amendment claims. Additionally, the Court **DENIES** Plaintiff's Motion for Appointment of Counsel. (Doc. 6.)

However, Plaintiff has stated plausible claims against Defendants Warden Stanley Williams and Deputy Warden Deal under the Eighth Amendment, and those claims shall proceed. Consequently, the Court hereby **ORDERS** that this Order, as well as the Complaint and all amendments thereto, be served on Defendants Williams and Deal. The Court provides

additional instructions to Plaintiff and Defendants pertaining to the future litigation of this action, which the parties are urged to read and follow.

## BACKGROUND[1]

Plaintiff claims arise out of an assault he suffered at the hands of his fellow inmates on February 17, 2014, while he was housed at Smith State Prison. (Doc. 1, p. 4.) In his original Complaint, filed on December 14, 2015, Plaintiff provides a detailed account of this assault. (Id. at pp. 4–6.) Through several pleadings, the last of which Plaintiff filed on May 5, 2016, Plaintiff provides additional details, including facts concerning Defendants Williams and Deal's involvement with Plaintiff prior to the assault and Plaintiff's efforts to exhaust his administrative remedies. (Docs. 7, 10, 11.)

Put succinctly, on the date of the incident, Plaintiff was housed in the G-2 Dormitory at Smith State Prison. (Doc. 1, p. 4.) As the evening inmate count was conducted, Plaintiff's roommate alerted him that a violent incident between inmates was about to take place. Id. Thus, Plaintiff retreated to his cell after the count. Id. Later that evening, approximately between 10:00 and 10:30 p.m. and after it appeared that the potential for violence had subsided, Plaintiff went to the second level of the dormitory and spoke with another inmate. (Id. at p. 5.) Then, Plaintiff walked toward another cell from where his name was being called. Id. At that time, unknown fellow inmates attacked Plaintiff. Id. The inmates punched, kicked, and stabbed Plaintiff repeatedly. Id. Plaintiff suffered 53 stab wounds, and he was left bleeding for approximately an hour before prison officials found him during lockdown between 11:35 and 11:45 p.m. Id. Plaintiff contends that the G-2 Dormitory is known for violence and that the

---

[1] The below recited facts are taken from Plaintiff's Complaint and are accepted as true as they must be at this stage.

dormitory lacks proper security measures. (Id. at p. 7.) Plaintiff further alleges that each Defendant failed to take measures to quell the violence in the dormitory. (Id. at pp. 8–9.)

In his Amended Complaint, Plaintiff provides more details regarding his allegations against Defendant Williams, then the Warden at Smith State Prison, and Deal, the Deputy Warden of Security at Smith State Prison. (Doc. 7, pp. 2–3.) Plaintiff contends that, prior to the attack on February 17, 2014, he had a meeting with Defendants Williams and Deal. Id. Plaintiff states that the two Defendants set up the meeting to discuss an assault on an inmate with whom Plaintiff was affiliated. Id. According to Plaintiff, due to that meeting, Defendants Williams and Deal were aware of the threat that rival gang members posed to Plaintiff. Id. Plaintiff alleges that the two Defendants purposely placed one of his assailants, a rival gang member, in the G Dormitory with Plaintiff.

Following the assault, Plaintiff was transferred to Georgia State Prison. Id. At Georgia State Prison, Plaintiff has been placed in Tier 2 administrative segregation. Id. In December of 2014, Defendant Williams became the Warden at Georgia State Prison. (Id. at p. 3.) Defendant Williams has told Plaintiff that he will make certain that Plaintiff does not get out of Tier 2 segregation or receive parole in 2018. Id.

## STANDARD OF REVIEW

Plaintiff seeks to bring this action *in forma pauperis* under 42 U.S.C. § 1983. Under 28 U.S.C. § 1915(a)(1), the Court may authorize the filing of a civil lawsuit without the prepayment of fees if the plaintiff submits an affidavit that includes a statement of all of his assets and shows an inability to pay the filing fee and also includes a statement of the nature of the action which shows that he is entitled to redress. Even if the plaintiff proves indigence, the Court must dismiss the action if it is frivolous or malicious, or fails to state a claim upon which relief may be

3

granted. 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii). Additionally, pursuant to 28 U.S.C. § 1915A, the Court must review a complaint in which a prisoner seeks redress from a governmental entity. Upon such screening, the Court must dismiss a complaint, or any portion thereof, that is frivolous or malicious, or fails to state a claim upon which relief may be granted or which seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

When reviewing a Complaint on an application to proceed *in forma pauperis*, the Court is guided by the instructions for pleading contained in the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R. Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set of circumstances). Further, a claim is frivolous under Section 1915(e)(2)(B)(i) "if it is 'without arguable merit either in law or fact.'" Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under Section 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Thompson v. Rundle, 393 F. App'x 675, 678 (11th Cir. 2010). Under that standard, this Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. Twombly, 550 U.S. at 555. Section 1915 also "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and

dismiss those claims whose factual contentions are clearly baseless." Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys.") (emphasis omitted) (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003)). However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules. McNeil v. United States, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

## DISCUSSION

### I. Dismissal of Claims for Monetary Damages against Defendants in Their Official Capacities

Plaintiff sues all Defendants in both their individual and official capacities. (Doc. 1, p. 3.) However, he cannot sustain a Section 1983 claim for monetary damages against Defendants in their official capacities. States are immune from private suits pursuant to the Eleventh Amendment and traditional principles of state sovereignty. Alden v. Maine, 527 U.S. 706, 712–13 (1999). Because a lawsuit against a state officer in his official capacity is "no different from a suit against the [s]tate itself," such a defendant is immune from suit under Section 1983. Id. at 71. Here, the State of Georgia would be the real party in interest in a suit against Defendants in their official capacities as employees and officers of the Georgia Department of Corrections. Accordingly, the Eleventh Amendment immunizes these actors from suit for monetary damages in their official capacities. See Free v. Granger, 887 F.2d 1552, 1557

5

(11th Cir. 1989). Absent a waiver of that immunity, Plaintiff cannot sustain any constitutional claims for monetary damages against Defendants in their official capacities. Section 1983 does not abrogate the well-established immunities of a state from suit without its consent. Will v. Mich. Dep't of State Police, 491 U.S. 58, 67 (1989). Therefore, the Court should **DISMISS** Plaintiff's Section 1983 claims for monetary relief against Defendants in their official capacities.

## II.     Supervisory Liability Claims against Defendant Owens

Section 1983 liability must be based on something more than a defendant's supervisory position or a theory of *respondeat superior*. Bryant v. Jones, 575 F.3d 1281, 1299 (11th Cir. 2009); Braddy v. Fla. Dep't of Labor & Emp't Sec., 133 F.3d 797, 801 (11th Cir. 1998). A supervisor may be liable only through personal participation in the alleged constitutional violation or when there is a causal connection between the supervisor's conduct and the alleged violations. Id. at 802. "To state a claim against a supervisory defendant, the plaintiff must allege (1) the supervisor's personal involvement in the violation of his constitutional rights, (2) the existence of a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights, (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it, or (4) a history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct." Barr v. Gee, 437 F. App'x 865, 875 (11th Cir. 2011).

Plaintiff wishes to hold Defendant Brian Owens liable based solely on Owens' supervisory position as the Commissioner of the Georgia Department of Corrections. He does not make any factual allegations that Owens directly participated in or was otherwise causally connected to the alleged deprivations of his constitutional rights. Rather, he claims that Defendant Owens "is legally responsible for the overall operation of the Department and each

institution under its jurisdiction, including Smith State Prison." (Doc. 1, p. 3.) He states that Defendant Owens has a duty to "make sure the officers are doing what they are suppose[d] to be doing." (Id.) As set forth above, such supervisory allegations are an insufficient basis for Section 1983 liability.

Moreover, as explained below, in order to establish that a defendant violated his Eighth Amendment rights, Plaintiff must show that the defendant was objectively aware of a risk to Plaintiff's safety and also that the defendant consciously disregarded that risk. Plaintiff does not plausibly allege these elements as to Defendant Owens. Rather, he relies upon conclusory and general allegations that Defendant Owens was aware of violence at Smith State Prison. Even under the standard of review at this early stage, these allegations cannot survive.

For all of these reasons, the Court should **DISMISS** all claims against Defendant Owens.

### III. Eighth Amendment Claims Against Defendants Williams and Deal

In order to state a claim for relief under Section 1983, a plaintiff must satisfy two elements. First, a plaintiff must allege that an act or omission deprived him "of some right, privilege, or immunity secured by the Constitution or laws of the United States." Hale v. Tallapoosa Cty., 50 F.3d 1579, 1582 (11th Cir. 1995). Second, a plaintiff must allege that the act or omission was committed by "a person acting under color of state law." Id. While Plaintiff lists several constitutional provisions throughout his pleadings, his pertinent allegations only implicate the Eight Amendment's prohibition against cruel and unusual punishment.

The Eighth Amendment's proscription against cruel and unusual punishment imposes a constitutional duty upon prison officials to take reasonable measures to guarantee the safety of prison inmates. "'To show a violation of [his] Eighth Amendment rights, [a p]laintiff must produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants'

7

deliberate indifference to that risk; and (3) causation.'" Smith v. Reg'l Dir. of Fla. Dep't of Corr., 368 F. App'x 9, 14 (11th Cir. 2010) (quoting Purcell ex rel. Estate of Morgan v. Toombs Cty., 400 F.3d 1313, 1319 (11th Cir. 2005)). "To be deliberately indifferent a prison official must know of and disregard 'an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Purcell, 400 F.3d at 1319–20).

Whether a substantial risk of serious harm exists so that the Eighth Amendment might be violated involves a legal rule that takes form through its application to facts. However, "simple negligence is not actionable under § 1983, and a plaintiff must allege a conscious or callous indifference to a prisoner's rights." Smith, 368 F. App'x at 14. In other words, "to find deliberate indifference on the part of a prison official, a plaintiff inmate must show: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." Thomas v. Bryant, 614 F.3d 1288, 1312 (11th Cir. 2010).

Like any deliberate indifference claim, a plaintiff must satisfy both an objective and a subjective inquiry. Chandler v. Crosby, 379 F.3d 1278, 1289–90 (11th Cir. 2004). Under the objective component, a plaintiff must prove the condition he complains of is sufficiently serious to violate the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 8 (1992). As for the subjective component, "the prisoner must prove that the prison official acted with 'deliberate indifference.'" Miller v. King, 384 F.3d 1248, 1260–61 (11th Cir. 2004) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). To prove deliberate indifference, the prisoner must show that prison officials "'acted with a sufficiently culpable state of mind'" with regard to the serious prison condition at issue. Id. (quoting Chandler, 379 F.3d at 1289–90).

Prison officials are not held liable for every attack by one inmate upon another, <u>Zatler v. Wainwright</u>, 802 F.2d 397, 400 (11th Cir. 1986), nor are they guarantors of a prisoner's safety. <u>Popham v. City of Talladega</u>, 908 F.2d 1561, 1564 (11th Cir. 1990). Rather, a prison official must be faced with a known risk of injury that rises to the level of a "strong likelihood rather than a mere possibility" before his failure to protect an inmate can be said to constitute deliberate indifference. <u>Brown v. Hughes</u>, 894 F.2d 1533, 1537 (11th Cir. 1990).

Plaintiff has set forth plausible claims that Defendants Williams and Deal violated his Eighth Amendment rights while acting under the color of state law. Specifically, through his Amended Complaint, Plaintiff plausibly alleges that Defendants Williams and Deal had direct knowledge of the harm that Plaintiff would face in the G Dormitory. (Doc. 7, pp. 2–3.) According to Plaintiff, prior to the attack, he had a meeting with Williams and Deal and discussed attacks against inmates associated with Plaintiff. <u>Id.</u> Plaintiff placed Williams and Deal on notice of the risk of attack that Plaintiff faced. <u>Id.</u> However, rather than abate that risk, Williams and Deal purposefully placed a rival gang member, one of Plaintiff's eventual assailants, in the same dormitory as Plaintiff. <u>Id.</u> Based on these allegations, Plaintiff's Eighth Amendment failure to protect claims will proceed against Defendants Williams and Deal.

### IV. Claims Against Defendant Correctional Officer at G-2 Dormitory

Plaintiff also names an unknown correctional officer that worked in the G-2 Dormitory on the night of his assault as a Defendant. He contends that the correctional officer was generally aware of the level of violence in the G-2 Dormitory but "failed to take proper steps to ensure the plaintiff's safety." (Doc. 1, p. 9.) Plaintiff states that the patrol officer failed to patrol the dormitory and failed to supervise the inmates in the dormitory on the night of Plaintiff's assault. (<u>Id.</u>)

In contrast to his allegations against Williams and Deal, Plaintiff's allegations against Defendant Correctional Officer do not establish that the officer was aware of a "strong likelihood" that Plaintiff faced an attack. See Brown v. Hughes, 894 F.2d at 1537. Again, prison officers are not guarantors of their charges' safety, and they are not held liable for every attack of an inmate that occurs on their watch. Zatler, 802 F.2d at 400; Popham, 908 F.2d at 1564. Moreover, even if Defendant Correctional Officer was aware of a known risk to Plaintiff's safety, Plaintiff has not sufficiently alleged that the officer acted with deliberate indifference to that risk.

At most, Plaintiff has alleged that Defendant Correctional Officer acted negligently and failed to follow proper procedures. However, acts of negligence fail to rise to the level of an Eighth Amendment violation. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment[ ] Clause." McCoy v. Webster, 47 F.3d 404, 408 (11th Cir. 1995). Thus, to constitute cruel and unusual punishment, "conduct that does not purport to be punishment . . . must involve more than ordinary lack of due care for the prisoner's interests or safety." Whitley v. Albers, 475 U.S. 312, 319 (1986). In other words, "[m]erely negligent failure to protect an inmate from attack does not justify liability under [42 U.S.C.] § 1983." Stuckey v. Thompson, No. CV405-216, 2007 WL 1035134, at *5 (S.D. Ga. Mar. 29, 2007) (citing Brown, 894 F.2d at 1537). Plaintiff has not alleged facts sufficient to show that Defendant Correctional Officer acted with more than gross negligence by failing to patrol the dormitory and supervise the inmates. See Patton v. Corr. Officer Rowell, No. 5:15-cv-25, 2015 WL 9916161, at *5 (S.D. Ga. Dec. 16, 2015) ("[W]hile Defendants' violations of standard operating procedures and failure to check to be certain that all

cells were locked may constitute *negligence*, they do not support deliberate indifference claims under the Eighth Amendment.") (emphasis added).[2]

For all of these reasons, the Court should **DISMISS** Plaintiff's claims against Defendant Correctional Officer at G-2 Dormitory.

**V.    Dismissal of Plaintiff's Unrelated Claims**

Through his Amended Complaint and other filings, Plaintiff complains of his placement in administrative segregation at Georgia State Prison. (Doc. 7, p. 3; Doc. 11.) Plaintiff takes issue with the process used to place him and keep him in administrative segregation. Id. It is not clear if Plaintiff includes this information for background purposes or if he intends to assert claims based on his placement. Regardless, Plaintiff cannot pursue unrelated claims in one Section 1983 Complaint. Smith v. Owens, No. 14-14039, 2015 WL 4281241, at *4 (11th Cir. July 16, 2015) (upholding this Court's dismissal of unrelated claims pursuant to Federal Rule of Civil Procedure 20(a), which will allow the joinder of claims if the claims arise "out of the same transaction, occurrence, or series of transactions or occurrences" and if "any question of law or fact common to all defendants will arise in the action.").

Plaintiff's failure to protect claims arising at Smith State Prison and his administrative segregation claims arising at Georgia State Prison are, at most, distantly related to one another. These claims involve entirely different transactions and occurrences as well as legal standards. Accordingly, they cannot be pursued in the same action. Therefore, I **RECOMMEND** that the Court **DISMISS** Plaintiff's claims regarding his placement in administrative segregation at Georgia State Prison **WITHOUT PREJUDICE**. Should Plaintiff seek to pursue these claims, he must do so through a separate lawsuit.

---

[2] Cf. Marsh v. Butler Cty., 268 F.3d 1014 (11th Cir. 2001) (en banc), *abrogated on other grounds by* Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).

11

## VI. Denial of Plaintiff's Motion for Counsel

In his Motion for Appointment of Counsel, Plaintiff requests that the Court appoint attorney John R. Burdges to represent him in this case. (Doc. 6.) Plaintiff states that he cannot afford counsel and that his ability to litigate this case will be limited due to his incarcerated status. Id.

In this civil case, Plaintiff has no constitutional right to the appointment of counsel, much less the right to counsel of his choice. Wright v. Langford, 562 F. App'x 769, 777 (11th Cir. 2014) (citing Bass v. Perrin, 170 F.3d 1312, 1320 (11th Cir. 1999)). "Although a court may, pursuant to 28 U.S.C. § 1915(e)(1), appoint counsel for an indigent plaintiff, it has broad discretion in making this decision, and should appoint counsel only in exceptional circumstances." Wright, 562 F. App'x at 777 (citing Bass, 170 F.3d at 1320). Appointment of counsel in a civil case is a "privilege that is justified only by exceptional circumstances, such as where the facts and legal issues are so novel or complex as to require the assistance of a trained practitioner." Fowler v. Jones, 899 F.2d 1088, 1096 (11th Cir. 1990) (citing Poole v. Lambert, 819 F.2d 1025, 1028 (11th Cir. 1987) and Wahl v. McIver, 773 F.2d 1169, 1174 (11th Cir. 1985)). The Eleventh Circuit has explained that "the key" to assessing whether counsel should be appointed "is whether the *pro se* litigant needs help in presenting the essential merits of his or her position to the court. Where the facts and issues are simple, he or she usually will not need such help." McDaniels v. Lee, 405 F. App'x 456, 457 (11th Cir. 2010) (quoting Kilgo v. Ricks, 983 F.2d 189, 193 (11th Cir.1993)).

The Court has reviewed the record and pleadings in this case and finds no "exceptional circumstances" warranting the appointment of counsel. While the Court understands that Plaintiff is incarcerated, this Court has repeatedly found that "prisoners do not receive special

consideration notwithstanding the challenges of litigating a case while incarcerated." Hampton v. Peeples, No. CV 614-104, 2015 WL 4112435, at *2 (S.D. Ga. July 7, 2015). "Indeed, the Eleventh Circuit has consistently upheld district courts' decisions to refuse appointment of counsel in 42 U.S.C. § 1983 actions similar to this case for want of exceptional circumstances." Id. (citing Smith v. Warden, Hardee Corr. Inst., 597 F. App'x 1027, 1030 (11th Cir. 2015); Wright, 562 F. App'x at 777; Faulkner v. Monroe Cty. Sheriff's Dep't, 523 F. App'x 696, 702 (11th Cir. 2013); McDaniels v. Lee, 405 F. App'x 456, 457 (11th Cir. 2010); Sims v. Nguyen, 403 F. App'x 410, 414 (11th Cir. 2010); Fowler, 899 F.2d at 1091, 1096; Wahl, 773 F.2d at 1174). As Plaintiff's numerous pleadings to date demonstrate, this case is not so complex legally or factually to prevent Plaintiff from presenting "the essential merits of his position" to the Court.

For these reasons, the Court **DENIES** Plaintiff's Motion for Appointment of Counsel.

## CONCLUSION

I **RECOMMEND** that the Court **DISMISS** Plaintiff's claims against Defendant Brian Owens, as well as Defendant Correctional Officer. I further **RECOMMEND** that that the Court **DISMISS** Plaintiff's claims for monetary damages against all Defendants in their official capacities, as well Plaintiff's claims pertaining to his placement in administrative segregation at Georgia State Prison. Additionally, the Court **DENIES** Plaintiff's Motion for Appointment of Counsel. (Doc. 6.)

However, Plaintiff has stated plausible claims against Defendants Warden Stanley Williams and Deputy Warden Deal under the Eighth Amendment, and those claims shall proceed. The Court provides the following instructions to the parties that will apply to the remainder of this action and which the Court urges the parties to read and follow.

13

## INSTRUCTIONS TO DEFENDANTS

Because Plaintiff is proceeding *in forma pauperis*, I **DIRECT** that service be effected by the United States Marshal. Fed. R. Civ. P. 4(c)(3). The Court **DIRECTS** the Marshal to serve Defendants Williams and Deal with a copy of this Order and Documents 1, 7, 10, and 11. In most cases, the marshal will first mail a copy of the complaint to the Defendants by first-class mail and request that the Defendants waive formal service of summons. Fed. R. Civ. P. 4(d); Local Rule 4.7. Individual and corporate defendants have a duty to avoid unnecessary costs of serving the summons, and any such defendant who fails to comply with the request for waiver must bear the costs of personal service unless good cause can be shown for the failure to return the waiver. Fed. R. Civ. P. 4(d)(2). Generally, a defendant who timely returns the waiver is not required to answer the complaint until sixty (60) days after the date that the marshal sent the request for waiver. Fed. R. Civ. P. 4(d)(3).

**IT IS FURTHER ORDERED** that Defendants are hereby granted leave of court to take the deposition of the Plaintiff upon oral examination. Fed. R. Civ. P. 30(a). Defendants are further advised that the Court's standard 140-day discovery period will commence upon the filing of the last answer. Local Rule 26.1. Defendants shall ensure that all discovery, including the Plaintiff's deposition and any other depositions in the case, is completed <u>within that discovery period</u>.

In the event that Defendants take the deposition of any other person, Defendants are ordered to comply with the requirements of Federal Rule of Civil Procedure 30. As the Plaintiff will likely not be in attendance for such a deposition, Defendants shall notify Plaintiff of the deposition and advise him that he may serve on Defendants, in a sealed envelope, within ten (10) days of the notice of deposition, written questions the Plaintiff wishes to propound to the

witness, if any. Defendants shall present such questions to the witness seriatim during the deposition. Fed. R. Civ. P. 30(c).

## INSTRUCTIONS TO PLAINTIFF

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants or, if appearance has been entered by counsel, upon their attorneys, a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date on which a true and correct copy of any document was mailed to Defendants or their counsel. Fed. R. Civ. P. 5. "Every pleading shall contain a caption setting forth the name of the court, the title of the action, [and] the file number." Fed. R. Civ. P. 10(a).

Plaintiff is charged with the responsibility of immediately informing this Court and defense counsel of any change of address during the pendency of this action. Local Rule 11.1. Plaintiff's failure to notify the Court of a change in his address may result in dismissal of this case.

Plaintiff has the responsibility for pursuing this case. For example, if Plaintiff wishes to obtain facts and information about the case from Defendants, Plaintiff must initiate discovery. See generally, Fed. R. Civ. P. 26, *et seq*. The discovery period in this case will expire 140 days after the filing of the last answer. Local Rule 26.1. Plaintiff does not need the permission of the Court to begin discovery, and Plaintiff should begin discovery promptly and complete it within this time period. Local Rule 26.1. Discovery materials should **not** be filed routinely with the Clerk of Court; exceptions include: when the Court directs filing; when a party needs such materials in connection with a motion or response, and then only to the extent necessary; and when needed for use at trial. Local Rule 26.4.

Interrogatories are a practical method of discovery for incarcerated persons. See Fed. R. Civ. P. 33. Interrogatories may be served only on a <u>party</u> to the litigation, and, for the purposes of the instant case, this means that interrogatories should not be directed to persons or organizations who are not <u>named</u> as Defendants. Interrogatories are not to contain more than twenty-five (25) questions. Fed. R. Civ. P. 33(a). If Plaintiff wishes to propound more than twenty-five (25) interrogatories to a party, Plaintiff must have permission of the Court. If Plaintiff wishes to file a motion to compel, pursuant to Federal Rule of Civil Procedure 37, he should first contact the attorney for Defendants and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery. Fed. R. Civ. P. 26(c); 37(a)(2)(A); Local Rule 26.7.

Plaintiff has the responsibility for maintaining his own records of the case. If Plaintiff loses papers and needs new copies, he may obtain them from the Clerk of Court at the standard cost of fifty cents ($.50) per page. **If Plaintiff seeks copies, he should request them directly from the Clerk of Court and is advised that the Court will authorize and require the collection of fees from his prison trust fund account to pay the cost of the copies at the aforementioned rate of fifty cents ($.50) per page.**

If Plaintiff does not press his case forward, the court may dismiss it for want of prosecution. Fed. R. Civ. P. 41; Local Rule 41.1.

It is Plaintiff's duty to cooperate fully in any discovery which may be initiated by Defendants. Upon no less than five (5) days' notice of the scheduled deposition date, the Plaintiff shall appear and permit his deposition to be taken and shall answer, under oath or solemn affirmation, any question which seeks information relevant to the subject matter of the

pending action. Failing to answer questions at the deposition or giving evasive or incomplete responses to questions will not be tolerated and may subject Plaintiff to severe sanctions, including dismissal of this case.

As the case progresses, Plaintiff may receive a notice addressed to "counsel of record" directing the parties to prepare and submit a Joint Status Report and a Proposed Pretrial Order. A plaintiff proceeding without counsel may prepare and file a unilateral Status Report and is required to prepare and file his own version of the Proposed Pretrial Order. A plaintiff who is incarcerated shall not be required or entitled to attend any status or pretrial conference which may be scheduled by the Court.

### ADDITIONAL INSTRUCTIONS TO PLAINTIFF REGARDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT

Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within fourteen (14) days of its service. "Failure to respond shall indicate that there is no opposition to a motion." Local Rule 7.5. Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that he does not oppose the Defendants' motion. Plaintiff's case may be dismissed for lack of prosecution if Plaintiff fails to respond to a motion to dismiss.

Plaintiff's response to a motion for summary judgment must be filed within twenty-one (21) days after service of the motion. Local Rules 7.5, 56.1. The failure to respond to such a motion shall indicate that there is no opposition to the motion. Furthermore, each material fact set forth in the Defendants' statement of material facts will be deemed admitted unless specifically controverted by an opposition statement. Should Defendants file a motion for summary judgment, Plaintiff is advised that he will have the burden of establishing the existence of a genuine dispute as to any material fact in this case. That burden cannot be carried by

17

reliance on the conclusory allegations contained within the complaint.  Should the Defendants' motion for summary judgment be supported by affidavit, Plaintiff must file counter-affidavits if he desires to contest the Defendants' statement of the facts.  Should Plaintiff fail to file opposing affidavits setting forth specific facts showing that there is a genuine dispute for trial, any factual assertions made in Defendants' affidavits will be accepted as true and summary judgment may be entered against the Plaintiff pursuant to Federal Rule of Civil Procedure 56.

**SO ORDERED**, this 20th day of May, 2016.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA