**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION**

XAVIER DANIELS,

    Plaintiff,

v.

WARDEN STANLEY WILLIAMS; and
DEPUTY WARDEN JAMES DEAL,

    Defendant.

CIVIL ACTION NO.: 6:15-cv-143

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, currently incarcerated at Georgia State Prison ("GSP") in Reidsville, Georgia, filed this cause of action pursuant to 42 U.S.C. § 1983, contesting certain conditions of his confinement. After the requisite frivolity review, Plaintiff's Complaint was served on Defendants Williams and Deal. (Doc. 15.) Defendants then filed a Motion to Dismiss based on Plaintiff's failure to exhaust his available administrative remedies prior to the filing of his Complaint. (Doc. 18.) Plaintiff filed a Response to the Motion to Dismiss on August 8, 2016. (Doc. 22.) Defendants filed a Reply. (Doc. 26.) For the reasons which follow, I **RECOMMEND** that the Court **GRANT** Defendants' Motion to Dismiss and **DISMISS** Plaintiff's Complaint, without prejudice, and **DENY** Plaintiff leave to appeal *in forma pauperis*. I further **RECOMMEND** that the Court **DIRECT** the Clerk of Court to **CLOSE** this case.

## BACKGROUND

Plaintiff filed this cause of action on December 14, 2015, but filed an Amended Complaint on February 29, 2016, with additional supplements up to May 5, 2016. (Docs. 7, 10, 11.) Plaintiff's pleadings center on an attack he suffered at the hands of other inmates at Smith

State Prison on February 17, 2014. (Doc. 1.) During the inmate count on the night of the attack, Plaintiff's cellmate alerted him that a violent incident between inmates would occur. (Doc. 1, p. 4.) In response, Plaintiff returned to his cell and stayed until it appeared that the attack had ended. When Plaintiff eventually left his cell, unknown inmates ambushed and assaulted him. (Id. at p. 5.) Plaintiff suffered 53 stab wounds and was found by prison officials approximately an hour later during lockdown. (Id.) Plaintiff was sent to Memorial Regional Hospital for treatment and immediately thereafter was transferred to GSP. (Id.)

Plaintiff alleges that, prior to the attack, he had a meeting with Defendants to discuss a separate attack on an inmate affiliated with Plaintiff. (Doc. 7, pp. 2–3.) Plaintiff contends that, because of this meeting, Defendants were aware that rival gang members posed a real threat to his safety. (Id.) However, Plaintiff avers that even after this meeting, Defendants purposely placed a rival gang member in his dormitory, contributing to his attack on February 17, 2014. (Id.)

Plaintiff's only remaining claims after frivolity review were his Eighth Amendment failure-to-intervene claims against Defendant Williams, the Warden at Smith State Prison during the relevant time period, and Defendant Deal, the Deputy Warden of Security at Smith State Prison. (Docs. 12, 16.) Defendants filed a Motion to Dismiss on July 26, 2016, arguing that Plaintiff failed to exhaust his available administrative remedies before bringing this action and failed to state a claim upon which relief can be granted. (Doc. 18.) Defendants support their Motion with a Brief, several exhibits, and a Reply Brief. (Id; Doc. 26.) Plaintiff filed several responsive pleadings stating that administrative remedies were unavailable to him because the grievance counselor did not file his grievances. (Docs. 22, 28–30.)

**DISCUSSION**

**I. Dismissal for Plaintiff's Failure to Exhaust GSP's Available Administrative Remedies Before Filing Suit**

    **A. Standard of Review**

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). "Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense . . . is not ordinarily the proper subject for a summary judgment; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." Id. at 1374–75 (internal citation omitted). "Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Id. at 1374 (internal punctuation and citation omitted). Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id. In these instances, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Id. at 1376.

In Turner v. Burnside, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit set forth a "two-step process" that lower courts must employ when examining the issue of exhaustion of administrative remedies. First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. Id. at 1082. If, even under the plaintiff's version of the facts, the plaintiff has not exhausted, the complaint must be dismissed. Id. However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's

3

facts as true. Id. Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]" Id. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083. The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. See Bryant, 530 F.3d at 1376–77.

### B. Legal Requirements for Exhaustion

Where Congress explicitly mandates, prisoners seeking relief for alleged constitutional violations must first exhaust inmate grievance procedures before filing suit in federal court. See Porter v. Nussle, 534 U.S. 516, 524 (2002). Section 1997e(a) of Title 42 of the United States Code states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." In Porter, the United States Supreme Court held that exhaustion of available administrative remedies is mandatory. Porter, 534 U.S. at 523; see also O'Brien v. United States, 137 F. App'x 295, 301–02 (11th Cir. 2005) (finding lack of exhaustion where prisoner "prematurely filed his civil complaint . . . and . . . 'failed to heed that clear statutory command' requiring that his administrative remedies be exhausted before bringing suit").

The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)). Furthermore, requiring

4

exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93 (2006).

The Supreme Court has noted exhaustion must be "proper." Id. at 92. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. In other words, an institution's requirements define what is considered exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007).

Thus, under the law, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process. Bryant, 530 F.3d at 1378 ("To exhaust administrative remedies in accordance with the PLRA [Prison Litigation Reform Act], prisoners must 'properly take each step within the administrative process.'") (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005)); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

Furthermore, an inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA. Johnson, 418 F.3d at 1157–59; Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (inmate's belief that administrative procedures are futile or needless does not excuse the exhaustion requirement). Additionally, "[t]he only facts pertinent to determining whether a

5

prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012).

"However, 'while [Section] 1997e(a) requires that a prisoner provide as much relevant information as he reasonably can in the administrative grievance process, it does not require more.'" Id. (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000)). The purpose of Section 1997e(a) is not that "fact-intensive litigation" result over whether every fact relevant to the cause of action was included in the grievance. Hooks v. Rich, CV605-65, 2006 WL 565909, at *5 (S.D. Ga. Mar. 7, 2006) (internal citation omitted). "'As long as the basic purposes of exhaustion are fulfilled, there does not appear to be any reason to require a prisoner plaintiff to present fully developed legal and factual claims at the administrative level.'" Id. (quoting Irvin v. Zamora, 161 F. Supp. 2d 1125, 1135 (S.D. Cal. 2001)). Rather, Section 1997e(a) is intended to force inmates to give state prison authorities a chance to correct constitutional violations in their prisons before resorting to federal suit and to prevent patently frivolous lawsuits. Id.

### C. The Georgia Department of Corrections' Grievance Procedure

The Georgia Department of Corrections' grievance procedure is set forth in Standard Operating Procedure ("SOP") IIB05-0001. (Doc. 16-3.) This SOP does not require an inmate to attempt an informal resolution of his complaint before filing a formal grievance. (Id. at p. 5.) An inmate can file, with a few exceptions, "a grievance about any condition, policy, procedure, or action or lack thereof that affects the [inmate] personally." Id. Grievance forms must be available in the control rooms of all living units and must be provided upon request by an offender. (Id. at p. 4.) An inmate must submit a grievance form "no later than 10 calendar days from the date the [inmate] knew, or should have known, of the facts giving rise to the grievance." (Id. at p. 8 (emphasis in original).) A "calendar day" is "a 24 hour time period from midnight to

6

midnight Monday through Sunday." (Id. at p. 2.) The inmate must use the prison's grievance form when filing the original grievance, and he must sign the grievance form and give it to any counselor. (Id. at pp. 7–8.) The counselor then gives the inmate the bottom portion of the grievance form as a receipt and forwards the grievance to the Grievance Coordinator. (Id. at p. 8.)

The Grievance Coordinator is to screen the grievance to determine whether the warden should accept the grievance or reject it. (Id.) The warden has a period of forty (40) calendar days from the date the inmate gave his grievance to the counselor to respond. An extension of ten (10) calendar days can be granted once, provided the inmate is advised in writing of the extension before the original 40 calendar days have expired. (Id. at pp. 10–11.) An inmate can file an appeal with the Commissioner's Office in the following instances: if the grievance coordinator rejects his original grievance; after the warden responds to the original grievance; or when the time allowed for the warden's decision has expired. The inmate has seven (7) calendar days in which to file this appeal. (Id. at p. 12.) The Commissioner has 100 calendar days after receipt to render a decision. (Id.) These time limits may be waived for good cause. (Id.)

### D. Assessment of Plaintiff's Exhaustion

#### 1. Whether Plaintiff Exhausted GSP's Administrative Remedies

Exhaustion of Plaintiff's administrative remedies is in dispute, not just between the parties but within Plaintiff's own filings. Under the first Turner step, this Court must take Plaintiff's version of the facts regarding exhaustion as true. However, Plaintiff's accounts are somewhat contradictory. In his original Complaint, Plaintiff states that on March 6, 2014, he "presented the facts relating to this complaint, and gave his grievance to Counselor Mr. Gates," but never received a receipt or a response. (Doc. 1, p. 8.) Then, in his Amended Complaint,

Plaintiff elaborates that he "wrote several grievances on the [tier] program about being punished for getting assaulted [sic], but the tier 2 policy states you cannot grieve the program, and you must appeal the decision made by the tier committee which appeals get misplaced or lost." (Doc. 7, p. 8.) Finally, Plaintiff's Response to Defendants' Motion to Dismiss includes both accounts. He states first that the grievance procedure was unavailable to him because the prison administration "does not follow their own rules set forth because there are not any grievance forms available period." (Doc. 22-1, p. 2.) However, several pages later, Plaintiff argues that he did properly exhaust his administrative remedies because on March 6, 2014, he placed "the grievance form in the counselor's who is an appoint official hand [sic]," but did not receive a receipt. (Id. at p. 11.) Furthermore, he contends that when he tried to follow up in August, "the counselor gave the plaintiff an hassle [sic] about the grievance procedure." (Id.) Plaintiff contends that he had to create his own form "and sented [sic] it to the Central Office, and Inmate Affairs Unit's office as well." (Id.) In contrast, Defendants aver that the grievance process was available to Plaintiff; he simply chose not to grieve the deliberate indifference issues with the prison or the Central Office. (Doc. 18-4, p. 1.)

Because of these conflicting accounts, the Court must proceed to the second Turner step and make a factual finding to resolve the dispute. Under these findings, the Court can then determine whether Plaintiff exhausted his administrative remedies. Turner, 541 F.3d at 1082–83. A review of Plaintiff's grievance history reveals that the grievance process was indeed available to him. In fact, Plaintiff successfully filed five formal grievances at GSP. (Doc. 18-4, p. 1.) However, the earliest grievance dates to August 14, 2014, well after the March 6, 2014, date that Plaintiff alleges he first filed his grievance regarding the attack at Smith State Prison. (Id.) In the August 2014 grievance, Plaintiff attempts to grieve his placement in the tier program—which

conforms to his statements in the Amended Complaint. (Id. at p. 6.) However, none of the other grievances relate in any way to his attack at Smith State Prison, much less allege any facts concerning Defendants' deliberate indifference toward Plaintiff's safety surrounding the attack.

Plaintiff provides no copies of receipts for the grievances he allegedly filed. Although Plaintiff argues that he did not receive any receipts for those grievances, he also fails to provide a copy of the form he allegedly created and sent to the Central Office—a document he had complete control over. Furthermore, while Defendants provided the Court copies of all Plaintiff's filed grievances along with the warden's responses, Plaintiff cryptically states that he "will not try to waste the court's time with an [sic] whole bunch of paperwork to try an [sic] distract them from the issues at hand." (Doc. 28, p. 2.)

### 2. Whether GSP's Administrative Remedies were Available to Plaintiff

Construing Plaintiff's arguments liberally, he contends that, even if he failed to exhaust GSP's administrative remedies, those remedies were not available to him. Though the Supreme Court rejected a "special circumstances" exception to exhaustion in Ross v. Blake, it reiterated that a prisoner need only exhaust those remedies which were available to him. ___ U.S. ___, 2016 WL 3128839, at *7 ("An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones.") The Court recognized "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Id. First, the Court stated that, in some instances, the administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. Thus, if the administrative procedure lacks authority or if the officials with apparent authority "decline ever to exercise it," the inmate has no obligation to exhaust the remedy. Id. Second, when administrative remedies are so confusing that they are "essentially

9

'unknowable,'" exhaustion is not required. Id. at *8 (citing Goebert v. Lee Cty., 510 F.3d 1312, 1323 (11th Cir. 2007), and Turner, 541 F.3d at 1084). Lastly, exhaustion is not required "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. However, the Supreme Court recognized that, "[g]iven prisons' own incentives to maintain functioning remedial processes, we expect that these circumstances will not often arise." Id. at *7.

Even under the first Turner step, Plaintiff does not establish that GSP officers were "unable or consistently unwilling to provide any relief to aggrieved inmates," that the GSP grievance process was so complicated that it was "essentially unknowable," or that Smith State Prison officers "thwart[ed] inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at *8. Plaintiff conclusively contends that the Prison "does not follow their own rules set forth because there are not any grievance forms available period." (Doc. 22-1, p. 2.) However, at other times, Plaintiff also contends that he was able to fill out grievance forms. Even if the hurdles to exhaustion existed as Plaintiff claims, they did not rise to the height of unavailability that the Supreme Court contemplated in Ross.

Plaintiff's claims of unavailability wither even more readily when subjected to the crucible of examination the second Turner step requires. Again, under that step, the Court resolves any disputed factual issues and then assesses, under those findings, whether the prisoner has exhausted his available administrative remedies. Turner, 541 F.3d 1083. Having reviewed all of Plaintiff's and Defendants' filings, the Court finds Defendants' account of the availability of administrative remedies more credible than Plaintiff's.

In support of their Motion to Dismiss, Defendants offer the affidavit of GSP Grievance Coordinator, Jacquelyn Ayeni. (Doc. 18-2.) Ayeni states that, upon admission to GSP, all

prisoners receive an oral explanation and an outline of the grievance process. (Id. at pp. 2–3.) She further testifies that all inmates may review the entire grievance SOP, which is located in the prison's law library. (Id. at p. 3.) Ayeni goes on to aver that "grievance forms are available in all living units and in the counselors' offices during business hours. Inmates in isolation and segregation areas are provided grievance forms upon request, by staff assigned to those areas." (Id. at p. 4.) This account, which the Court finds to be more credible than Plaintiff's conflicting account, contradicts any argument that Plaintiff could not access GSP's grievance process.

Moreover, Plaintiff's grievance history belies any contention that prison officials thwarted his attempts to file grievances or otherwise made the grievance process unavailable to him. (Doc. 18-4.) Plaintiff filed five grievances between August 14, 2014, and June 22, 2016. Id. Given Plaintiff's grievance history and Ayeni's affidavit, any argument that Plaintiff makes regarding unavailability does not hold water. Wright v. Langford, 562 F. App'x 769, 776 (11th Cir. 2014) ("[I]t was reasonable for the district court to find that [plaintiff's] purported ignorance of the five-day grievance filing period was not credible, given [plaintiff's] significant prior experiences filing grievances and lawsuits in federal court, as well as the jail official's affidavit stating that each [county] inmate is given a copy of the Inmate Handbook spelling out the grievance procedure.")

In sum, Plaintiff filed this lawsuit without ever alerting prison officials to the facts underlying his claims. An inmate must do more to resolve his dispute within the literal walls, or at least the figurative walls, of the prison system before seeking relief in the halls of the courthouse.

The Court finds that the evidence points overwhelmingly in favor of Defendants' account—that Plaintiff did not exhaust the administrative remedies available to him.

Furthermore, what contentions Plaintiff did exhaust pertained to his Tier 2 placement, not Defendants' alleged deliberate indifference during the Smith State Prison attack. For all of these reasons, the Court should **GRANT** Defendants' Motion and **DISMISS** Plaintiff's Complaint.

## II.     Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.[1] Though Plaintiff has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. See Fed. R. App. R. 24(a)(1)(A) ("A party who was permitted to proceed *in forma pauperis* in the district-court action, . . ., may proceed on appeal *in forma pauperis* without further authorization, unless the district court—before or after the notice of appeal is filed—certifies that the appeal is not taken in good faith[.]"). An appeal cannot be taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

---

[1] A Certificate of Appealability ("COA") is not required to file an appeal in a Section 1983 action. See Fed. R. App. P. 3 & 4; Morefield v. Smith, No. 607CV010, 2007 WL 1893677, at *1 (S.D. Ga. July 2, 2007) (citing Mathis v. Smith, No. 05-13123-A (11th Cir. Aug. 29, 2005) (unpublished)).

Based on the above analysis of Defendants' Motion to Dismiss and Plaintiff's Response, there are no non-frivolous issues to raise on appeal, and any appeal would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **GRANT** Defendants' Motion to Dismiss, (doc. 18), **DISMISS** Plaintiff's Complaint, without prejudice, for failure to exhaust his available administrative remedies, and **DIRECT** the Clerk of Court to **CLOSE** this case. I further **RECOMMEND** that the Court **DENY** Plaintiff leave to appeal *in forma pauperis*.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final

judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED** and **RECOMMENDED**, this 3rd day of November, 2016.

_____
R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA